**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Terri V. Bracamonte, | No. CV-20-01373-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Terri V. Bracamonte's Application for Disability Insurance Benefits. Plaintiff filed a Complaint (Doc. 1) with this Court seeking review of that denial, and this Court now addresses Plaintiff's Opening Brief (Doc. 21, Pl. Br.), Defendant Social Security Administration Commissioner's Answering Brief (Doc. 22, Def. Br.), and Plaintiff's Reply Brief (Doc. 23, Reply). The Court has reviewed the briefs and the Administrative Record (Doc. 13, R). For the following reasons, the Administrative Law Judge's decision ("ALJ") is affirmed in part and reversed and remanded in part.

**I.     BACKGROUND**

Plaintiff applied for Social Security Disability Insurance in April 2017. (R. 68.) The Commissioner denied Plaintiff's application initially and again on reconsideration. (R. 67–80, 81–96.) Plaintiff filed a request for reconsideration, (R. 103) so an ALJ held a hearing in May 2019. (R. 42–66.) Plaintiff and a vocational expert testified. (R. 44, 58.) The ALJ concluded that Plaintiff was not disabled. (R. 11–24.) The ALJ applied the five-step sequential evaluation and determined at Step 4 and Step 5 that Plaintiff does not have

an impairment that meets one of the listed impairments in 20 CFR Part 404, and in light of all of her symptoms and the medical opinion evidence, the Plaintiff has residual functional capacity to perform light work with limited additions. (R. 17–18.) Plaintiff filed a request for review. (R. 8.) In May 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (R. 1–4.) Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 45 U.S.C. § 405(g).

The pertinent medical evidence will be discussed in addressing the issues raised by Plaintiff. Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the severe impairments of fibromyalgia and osteoarthritis. (*See* R. at 16.) The ALJ reviewed the entire record, including medical records and statements from Plaintiff, and a vocational expert. (R. 42–66.) The ALJ calculated Plaintiff's residual functional capacity ("RFC"):

> [Plaintiff] has the [RFC] to perform light work as defined in 20 CFR 404.2567(b) except with the following additional limitations: The [Plaintiff] can handle, finger and feel frequently with the left and right hands. [The Plaintiff] can climb ramps and stairs frequently; and ladders, ropes, or scaffolds occasionally. She can stoop frequently, kneel frequently, crouch frequently and crawl occasionally.

(R. 18.) Accordingly, the ALJ compared the Plaintiff's RFC with "the physical and mental demands of the claimant's past relevant work," and determined that she is able to perform that past relevant work as a financial customer service representative, fraud investigator, sales representative, loan officer, or administrative assistant. (R. 11.)

## II.   LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.*

(quotation omitted). To determine whether substantial evidence supports a decision, the Court must consider the entire record and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* (quotation omitted). Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). "[The Court] review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he [or she] did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014). "Even when the ALJ commits legal error, [the Court] uphold[s] the decision where that error is harmless." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014). "An error is harmless if it is inconsequential to the ultimate nondisability determination, or if the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Id.* (citations and internal quotation marks omitted).

To determine whether a claimant is disabled, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where the ALJ determines

whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

## III. ANALYSIS

Plaintiff contends that the ALJ erred by rejecting both her symptom testimony and medical opinion evidence provided by her treating physician, Dr. Carolyn Pace. (Pl. Br. at 12, 19.) Plaintiff contends that in light of these errors, the Court should apply the "credit-as-true" rule and remand for an award of benefits. The Court finds that the ALJ did not err in rejecting Plaintiff's symptom testimony, but the ALJ did not follow the appropriate standards in evaluating the medical opinion evidence of Dr. Pace. Nonetheless, the Court will not credit Dr. Pace's opinions as true but reverses and remands for a new disability determination.

### A. Plaintiff's Symptom Testimony

Plaintiff first contends that the ALJ erred in rejecting her symptom testimony. (Pl. Br. at 11–20.) She argues that the ALJ committed materially harmful error by rejecting her symptom testimony, especially because the vocational expert testified that the limitations Plaintiff presented "would make it impossible to perform any sustained work." (Pl. Br. at 12.) An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison*, 759 F.3d at 1014. First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)). Second, absent evidence of malingering, an ALJ may only discount a claimant's allegations for reasons that are "specific, clear and convincing" and supported by substantial evidence. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citation omitted). This is the most demanding standard in Social Security cases. *Garrison*, 759 F.3d at 1014–15.

The ALJ "must specifically identify the testimony she or he finds not to be credible

and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings are insufficient. *Id.* "[T]he ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." *Molina*, 674 F.3d at 1112. For instance, the ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1040). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment," *id.* at 1113, or where they suggest that "later claims about the severity of [the] limitations were exaggerated," *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009). Additionally, the ALJ may consider "whether the claimant takes medication or undergoes other treatment for the symptoms." *Lingenfelter*, 504 F.3d at 1040; *see also* 20 C.F.R. § 404.1529(c)(3). The ALJ may properly consider that the medical record lacks evidence to support certain symptom testimony, but that cannot form the sole basis for discounting the testimony. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

First, Plaintiff argues that the ALJ "did not make a determination of the credibility of [Plaintiff's] symptoms" because the ALJ made a general reference to Plaintiff's "alleged symptoms" and failed to "tie-in his characterization of the medical record with any particular symptom testimony." (Pl. Br. 13, 15, Reply 8.) However, the ALJ referred on numerous occasions to "complaints of constant and severe pain in her hands, wrists and feet," "the claimant's pain allegations," and "her allegations of being in 'constant pain.'" (R. 19–20.) The Court finds this specificity satisfies the 42 U.S.C. § 423(d)(5)(A) test. *Holohan*, 246 F.3d at 1208.

At step one of the test, the ALJ made a finding that the medical evidence reflects the presence of fibromyalgia and osteoarthritis. (R. 19.) Then, the ALJ considered Plaintiff's testimony that she has severe pain (a level 8 out of 10 on a good day) due to her fibromyalgia, which causes problems to her bending down and sitting, as well as typing, filing or answering phones. (R. 19, 52.) At step two, however, the ALJ determined

Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the record. (R. 19.) In support of this conclusion, the ALJ listed the noted improvement in her symptoms after physical therapy, the success of her treatment for arthritis, diagnostic imaging studies, the lack of "tender points" that Plaintiff experienced, and Plaintiff's ability to engage in meaningful daily activities. (R. 19–20.) The Court addresses whether the ALJ's reasons for rejecting Plaintiff's symptom testimony were sufficiently specific, clear, and convincing.

The Court finds that the ALJ properly discounted Plaintiff's symptom testimony because it was inconsistent with the objective medical evidence in the record. (R. 21.) Specifically, the ALJ concluded that "diagnostic imaging studies indicated the [Plaintiff's] impairments are not as severe as alleged in connection with this application for benefits." (*Id.*) In proving this, the ALJ relied on diagnostic imaging studies conducted in August and October of 2016 and July and August of 2017 that showed some degenerative changes, but otherwise, minimal joint space narrowing, minimal soft tissue swelling, and no acute cardiopulmonary disease or rheumatoid nodules. (R. 21, *see, e.g.*, 298, 306–13, 458–71, 533–37, 564–69, 575–76, 738–44, 818–19, 911–923). The Court finds no error in the ALJ's reliance on these diagnostic images over a two-year period showing little to no damage to conclude that Plaintiff's impairments are not as severe as alleged. (R. 21.)

The ALJ also found that the medical records did not support Plaintiff's complaints of "constant and severe pain in her hands, wrists and feet." (R. 20.) To support this finding, the ALJ relied on the American College of Rheumatology definition of fibromyalgia: "widespread pain in all four quadrants of the body for a minimum duration of 3 months and at least 11 of the 18 specified tender points which cluster around the neck and shoulder, chest, hip, knee, and elbow regions." (R. 20.) The ALJ relied on an October 2016 examination which found "some signs of fibromyalgia issues but fewer tender points than typically seen in fibromyalgia." (R. 20, 490.) By February 2017, a medical examination showed Plaintiff, in regard to fibromyalgia, was "currently stable, although does have ongoing myalgias." (R. 20, 368.)

       Additionally, the ALJ relied on Plaintiff's physical therapy records as evidence that Plaintiff's "pain allegations are not consistent in light of the medical evidence." (R. 21.) A January 2017 physical therapy record indicated Plaintiff was discharged after reaching her physical therapy goals "without pain at end ranges" and "improved with function such as sleeping, cleaning, and being active in the day. She has minimal soreness following cleaning." (R. 286.) Plaintiff argues that this record refers only to cervical spine pain only, and her condition has since worsened. (Pl. Br. 15–16.) When evaluating the intensity and persistence of a claimant's subjective symptoms, the ALJ may consider the treatment the claimant receives for relief of pain or other symptoms. *See* 20 C.F.R. § 404.1529(c)(3)(v). Plaintiff reported "no pain"—cervical or otherwise—at rest, and she reported she was 85 to 90% improved. (R. 284.) Plaintiff's statements in the physical therapy records, and subsequent statements to medical doctors showing no report of limited joint mobility, muscle pain, neck pain, back pain, or difficulty walking, support the ALJ's finding that the medical record was inconsistent with her testimony. (R. 360, 367.)

       Finally, the ALJ provided other reasons for discounting Plaintiff's allegations of pain, such as records indicating inconsistencies with her reported activity level and Plaintiff's ability to do everyday tasks like open a water bottle, pick up coins and count dollar bills. (R. 21.) Because the Court has found at least two legally valid reasons supported by substantial evidence for the ALJ's discounting of Plaintiff's allegations, it need not determine the validity of the ALJ's other reasons. Even if the Court were to find error in one or more of these remaining reasons, it would not change the outcome. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (finding the ALJ's reliance on an invalid reason to discount claimant's allegations was "harmless error" where the ALJ had also relied on other valid reasons).

       The Court is not persuaded by Plaintiff's argument that the "ALJ's belief that the *severity* of a claimant's reported symptoms may be properly rejected on the basis the 'symptoms are not consistent with the medical evidence' is a fundamental legal error." (Pl. Br. at 14, *see also* Reply at 3, 7.) *See Molina*, 674 F.3d at 1112; *see also* 20 C.F.R.

§ 404.1529(c)(3).  Rather, to evaluate the severity of the symptoms, the ALJ may consider "*the objective medical evidence*, the claimant's daily activities, the location, duration, frequency, and intensity of the claimant's pain or other symptoms, precipitating and aggravating factors, medication taken, and treatments for relief of pain or other symptoms." *Clark v. Astrue*, No. CV-11-2561-PHX-BSB, 2013 WL 254065, at *11 (D. Ariz. Jan. 23, 2013) (emphasis added).  The Court notes that here, the ALJ did not reject Plaintiff's claim based on mere medical evidence as Plaintiff seems to imply. (*See* Reply at 7.)  Instead, the ALJ considered the Plaintiff's symptom testimony in comparison to the objective medical evidence in the record, the claimant's reported daily activities of eating granola, nuts, oatmeal, and cereal, and sitting for 5 to 10 minutes at a time, the location of her pain in her hands, wrists, and feet, as well as her cervical spine, and treatment she has taken (Tramadol, 25 mg nightly, Gabapetin, Cymbalta, but she was allergic).  Plaintiff's arguments to the contrary are rejected.

Accordingly, Plaintiff's arguments do not persuade the Court that the ALJ improperly rejected her symptom testimony.

**B.    Medical Opinion Evidence**

**1.    Treating Physician Rule[1]**

Plaintiff next argues that the ALJ improperly rejected the medical opinion evidence of Dr. Carolyn Pace in light of Dr. Pace's role as a treating physician. (Pl. Br. at 19, 21.) The Defendant responds that the ALJ properly applied the post-2017 framework for analyzing medical opinion testimony, which eliminated the hierarchy of medical opinions and instead give no deference to any medical opinions. (Def. Br. at 6–7.)

Plaintiff suggests that the new post-2017 regulations are inapplicable to her case because Ninth Circuit case law such as *Sprague v. Bowen*, 812 F.2d 1126 (9th Cir. 1987),

---

[1] The "treating physician rule" provides deference to opinions from treating physicians because they "are employed to cure and thus have a greater opportunity to know and observe the patient as an individual, [and so] their opinions are given greater weight than the opinions of other physicians." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). The rule also requires an ALJ to provide specific and legitimate reasons, based on substantial evidence, to reject a treating physician's opinion. *Lester v. Chater*, 81 F.3d 821, 831-33 & n.8 (9th Cir. 1996).

(decided prior to the rule change) "recognized the importance of treating physicians' opinions about their patients' conditions." (Pl. Br. at 20.) Therefore, she argues that treating physicians' medical opinions are still entitled to deference, despite direct regulatory authority to the contrary. (*Id.*)

In addressing this argument, the Court adopts the same reasoning as set forth in *Pennock v. Comm'r of Soc. Sec. Admin.*, No. CV-19-08191, 2020 WL 6796768, at *2–3 (D. Ariz. Nov. 19, 2020). Though the Court recognizes that whether the "treating physician rule" remains valid in light of the new 2017 regulations appears to be an open question in the Ninth Circuit, Plaintiff has not provided the Court with any persuasive reason why the Ninth Circuit would not follow the Secretary's promulgated regulations concerning the weight of evidence. *Id.,* quoting *Schisler v. Sullivan*, 3 F.3d 563, 564–65 (2d Cir. 1993). As such, Plaintiff is not entitled to reversal based on her argument that the ALJ applied the wrong legal framework in his analysis of Plaintiff's treating physician.

### 2. Opinion of Dr. Pace

Under the new post-March 27, 2017 standards, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c. Rather, the ALJ will consider all medical opinions according to several factors: whether the opinion is supported by objective medical evidence, whether it is consistent with the evidence from other sources, and the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, examining relationship, and specialization. *Alonzo v. Comm'r of Soc. Sec. Admin.*, No. CV-18-08317-PCT-JZB, 2020 WL 1000024, at *3 (D. Ariz. Mar. 2, 2020) (citing *Jackson v. Saul*, No. CV 18-4374, 2019 WL 4058997, at *10 (E.D. Pa. Aug. 27, 2019)). The most important of these factors are supportability and consistency. *Id.*; *see also* 20 C.F.R. § 404.1520c(b).

Plaintiff contends that the "vocational expert testified that a person with limitations assessed by Dr. Pace would be unable to perform any sustained work" so the ALJ's rejection of Dr. Pace's testimony was materially harmful error. (*Id.*) The ALJ found Dr.

Pace's opinion to be "uncorroborated by the medical evidence of the record" and thus "unpersuasive in the finding of disability." (R. 22.)

In March 2017, Dr. Pace completed a Restrictions Form for a Workman's Compensation Benefit, where she reported Plaintiff is "unable to perform repetitive actions with her hands and wrists" and is "trying to get her arthritis under control with medication." (R. 475.) In August 2017, Dr. Pace submitted a Medical Assessment of Ability To Do Work Related Activities Form, in which she reported Plaintiff can sit for 3 out of 8 hours in a work day and is experiencing "moderately severe" pain. (R. 707–08.) In September 2017, Dr. Pace completed a Fibromyalgia questionnaire describing Plaintiff's symptoms. (R. 1052.) In this one-page document, Dr. Pace marked the "yes" checkbox for 12 out of 12 possible fibromyalgia symptoms, and then the ultimate conclusion that yes, these symptoms impair the Plaintiff's ability to do work-related activities. (*Id.*) In June 2018, Dr. Pace completed another Medical Assessment of Ability To Do Work Related Activities Form, in which she reported again that Plaintiff can sit for 3 out of 8 hours in a work day and is experiencing "moderately severe" pain. (R. 587–89.)

The ALJ concluded that Dr. Pace's opinion was "unpersuasive" because (1) Dr. Pace's opinion is uncorroborated by the medical evidence of record; and (2) Dr. Pace's opinion relies heavily on the Plaintiff's subjective statements. (R. 22.) The ALJ stated specifically that Dr. Pace's treatment notes indicated Plaintiff's prognosis was "good" and that Plaintiff "could restore original function and decrease her pain with concurrent medical management." (*Id.*) Moreover, the ALJ relied on Dr. Pace's notation that imaging of Plaintiff's body was "mostly mild." (*Id.*)

These reasons were insufficient for the ALJ to reject Dr. Pace's opinion. First, as to the supportability and consistency factors, the "good" prognosis outlook and the fact that Plaintiff "could restore original function and decrease her pain with concurrent medical management" came from a different medical source—Dr. Deryl Lamb, M.D., who evaluated Plaintiff in December 2016. (R. 480–81.) These statements were made prior to each of Dr. Pace's evaluations. (*Compare* R. 480–81 *with* 475, 587, 707, 1052). Moreover,

the purpose of Dr. Lamb's evaluation was only to assess Plaintiff's right knee and leg, not her overall pain levels due to her fibromyalgia. (R. 480.) Though it is permissible for an ALJ to rely on the lack of consistency between a provider's own treatment notes and the entire medical record, the citations to the record provided by the ALJ here are not to the entire medical record, but rather are to one evaluation made on one day, and therefore do not adequately discount Dr. Pace's opinion. *Compare Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) ("The ALJ rejected Dr. Tobin's statement that Bayliss could stand or walk for only fifteen minutes at a time. Dr. Tobin took clinical notes on the same day that he made this statement. These notes, and the doctor's other recorded observations and opinions regarding Bayliss's capabilities, contradict Dr. Tobin's statement assessing Bayliss's ability to stand or walk. Such a discrepancy is a clear and convincing reason for not relying on the doctor's opinion regarding Bayliss's limited ability to stand and walk.").

Secondly, the ALJ failed to address the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, examining relationship, and specialization of Dr. Pace. 20 C.F.R. § 404.1520c. Accordingly, the Court finds that the ALJ erred in evaluating Dr. Pace's opinion.

### IV.   CREDIT-AS-TRUE RULE

In the past, this Court applied the credit-as-true rule where an ALJ failed to provide adequate reasons for rejecting the opinion of a physician. *See Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). In that circumstance, and where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison*, 759 F.3d at 1020. But under the new regulations, the Social Security Administration has plainly stated that the credit-as-true rule "is never appropriate." *Alonzo*, 2020 WL 1000042 at *8 (quoting Social Security Administration, Revisions to the Rules Regarding the Evaluation of Medical Evidence,

Medical/Professional Relations, https://www.ssa.gov/disability/professionals/bluebook/revisions-rules.html).  As such, the Court finds that the credit-as-true rule here is inappropriate as to Dr. Pace's medical opinion.  The record is fully developed, but a new disability determination must be made with proper consideration of Dr. Pace's medical opinion.

**V.     CONCLUSION**

Therefore,

**IT IS ORDERED** reversing and remanding the June 11, 2019 decision of the Administrative Law Judge (R. at 14–24) for a new disability determination.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close the case.

Dated this 13th day of September, 2021.

Michael T. Liburdi
United States District Judge